# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| TWIST REALTY, L.P. | * | CIVIL ACTION NO. 08-1136 |
|---|---|---|
| VERSUS | * | JUDGE JAMES |
| STARBUCKS CORPORATION | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is plaintiff, Twist Monroe, L.P.'s motion for partial summary judgment [doc. # 16]. For reasons set forth below, it is recommended that the motion be GRANTED in part to the extent that it seeks a determination that defendant has breached and defaulted upon its payment obligations under the June 11, 2007, Commercial Lease, but that the motion otherwise be DENIED.

## Procedural Background

On July 18, 2008, Twist Realty, L.P. filed the instant Petition to Enforce Commercial Lease against Starbucks Corporation ("Starbucks") in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana. The suit seeks to recover past, present, and future lease payments, collateral damages, and attorney's fees stemming from Starbucks' alleged failure to comply with the terms of a June 11, 2007, Commercial Lease entered into between Twist Realty, L.P. and Starbucks. On August 6, 2008, Starbucks removed the case to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Following removal, plaintiff amended its petition to

substitute Twist Monroe L.P. (hereinafter "Twist") in lieu of Twist Realty L.P.[1] The original and substituted plaintiffs are diverse from defendant, and the amount in controversy exceeds $75,000. *See*, Amend. Notice of Removal and 2nd Amend. Compl. [doc. #s 11 & 40].[2]

On October 10, 2008, plaintiff filed the instant motion for partial summary judgment. [doc. # 16]. The motion seeks a determination that Starbucks breached and defaulted upon its payment obligations under the June 11, 2007, Commercial Lease, and consequently, it is liable for past, present, and future base rent and its pro rata share of operating expenses, insurance, and property taxes, plus attorney's fees. Following delays to assure subject matter jurisdiction, the matter is now before the court.

## Summary Judgment Principles

Summary judgment is appropriate when the evidence before the Court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a

---

[1] On July 23, 2007, Twist L.P. assigned its interest in the June 11, 2007, Commercial Lease to Twist. (*See*, Unopp. M/ Substitute Party Pl. [doc. # 22]).

[2] At the time of removal, the amount of rent past due was below $ 15,0000-20,000. (*See*, Petition). However, the petition seeks to recover future rental payments for the full term of the ten year lease, plus attorney's fees, and ancillary damages due to Twist's inability to lease other units at the shopping center. *Id*. at ¶ 17, Prayer. Plaintiff's good faith claim for damages establishes that at the time of removal the amount in controversy exceeded $ 75,000. Even if plaintiff ultimately fails to recover future rental payments, see discussion *infra*, its inability to so prevail does not preclude those claims from the amount in controversy calculus. *See, Carnahan v. Southern Pacific R.R. Transp. Co.* 914 F. Supp. 1430, 1432 (E.D. Tex. 1995) (amount in controversy is akin to "possible exposure" to liability). Moreover, the "legal certainty" test does not apply when plaintiff has alleged an indeterminate amount of damages. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (citation omitted).

movant bears the burden of proof on an issue, it must establish "beyond peradventure[3] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## Analysis

### I. Louisiana Law Applies

Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211(1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817 (1938). The Commercial Lease at the heart of the instant dispute provides that it shall be governed by the laws of the state where the premises are located, i.e. Louisiana. (Commercial Lease, ¶ 23.12, Exhs. A-B [doc. # 17]).

Under Louisiana's Conflicts of Laws provisions, "issues of conventional obligations are governed by the law expressly chosen . . . by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." La. Civ. Code Art. 3540. In the case *sub judice*, neither side contends that Louisiana law contravenes the public policy of any other state whose law would otherwise apply; thus the court will apply Louisiana law to the conventional obligations issues raised in the instant motion. *See, In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled), *cert. denied sub nom. Xavier*

---

[3] I.e., beyond doubt.

*University of Louisiana v. Travelers Cas. Property Co. of America*, ___ U.S. ___, 128 S.Ct. 1230 (Feb 19, 2008); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed).

## II. Undisputed Facts

In conjunction with its motion for summary judgment, Twist set forth material undisputed facts which are substantially adopted and incorporated herein:[4]

> 1. **June 11, 2007** -- Twist and Starbucks enter into a Commercial Lease ("**Lease**") whereby Twist agreed to improve its immovable property (located within the territorial jurisdiction of this Honorable Court) to the specifications of Starbucks for the purpose of Starbucks' occupancy as the anchor tenant of the improved immovable property, where it would operate one of its ubiquitous coffee shops;
>
> 2**. Twist Realty, L.P. and Twist Monroe, L.P.** -- all of the owners, partners, members, and other principals are residents of and domiciled in the States of Texas, Arkansas, and Louisiana, and none of the owners, partners, members, and other principals of either entity are residents of or domiciled in the State of Washington;
>
> 3. **Attorney's Fees** -- the Lease, at Section 23.16 Attorneys' Fees, entitles Twist, should it be the prevailing party in this action, to payment by Starbucks of its reasonable attorneys fees, as fixed by this Honorable Court;
>
> 4. **July 23 2007** -- TWIST REALTY, L.P. executed an *Assignment of Lease* of the Lease to TWIST MONROE, L.P.;
>
> 5. **March 11, 2008** -- Twist timely delivered to Starbucks possession of the leased premises;

---

[4] The facts set forth in the movant's statement of material facts are deemed admitted to the extent that they are not controverted by the non-movant's statement of material facts. LR 56.2. Starbucks disputes whether Twist used commercially reasonable efforts to obtain another tenant, and questions whether Twist has adequately mitigated its damages. *See*, Statement of Disputed Material Facts [doc. # 28]. Due to Starbucks' inability to conduct discovery on these issues, the court declines to adopt paragraphs 15-18 of Twist's Statement of Material, Undisputed Facts. *See*, discussion, *infra*.

6.  **April 1, 2008** -- Twist and Starbucks executed a document styled *Delivery of Possession* wherein Starbucks acknowledged that work on the leased premises was complete and Starbucks further acknowledged that it accepted possession of the premises, which possession was tendered to Starbucks March 11, 2008, that it had leased from Twist, *sans* any express or implied conditions to its acceptance of possession of the leased premises (the *Delivery of Possession* does not set forth any incomplete items of "Landlord's Work"; Starbucks did not provide to Twist any "punchlist items");

7.  **April 4, 2008** -- Twist, by way of correspondence of this date, provided Starbucks with further notice of its delivery of possession of the leased premises and on this same date Twist advised Starbucks that rent payments would commence in June of 2008;

8.  **June 10, 2008** -- Starbucks' first rental payment fell due under the terms of the Lease (§3.1(a) provides that "ninety (90) days after the date that Tenant accepts possession of the Premises with Landlord's Work complete," where 90 days from Starbucks' acceptance of possession on March 11, 2008, calculates to June 9, 2008);

9.  **June 19, 2008** -- Twist, by way of correspondence of this date, made demand on Starbucks for a prorated portion of the monthly lease payment (inclusive of base rent, taxes, insurances, and operating expenses), with payment for said monthly lease payment having become due and payable on June 10, 2008, pursuant to the terms of the Lease, prorated to cover the period of June 10, 2008, through June 30, 2008 (§3.1 provides that rent "for any period during the Term less than one calendar month shall be prorated on a daily basis based on a three hundred sixty-five (365) day year.");

10.  **July 1, 2008** -- Starbucks posted a press release on its website stating that "our executive and field leadership team ... has decided to close approximately 600 underperforming company-operated stores in the U.S. market";

11.  **July 1, 2008** -- Starbucks posted another press release on its website stating that it projects "$120 to $140 million for lease termination costs and future lease obligations," but this same press release further advises these expenses will be "recognized in the fourth quarter of fiscal 2008 and the first half of fiscal 2009";

12.  **July 8, 2008** -- Twist, by way of correspondence from its Texas counsel of this date, provided Starbucks with notice of default pursuant to the terms of the Lease;

13.  **July 11, 2008** -- Twist, by way of correspondence from its Texas counsel of

this date, made demand upon Starbucks for the $6,947.92 monthly lease payment (inclusive of base rent, taxes, insurances, and operating expenses), with said monthly lease payment having become due and payable on July 1, 2008, pursuant to the terms of the Lease;

14. **Ready to Perform** -- commencing June 11, 2007, Twist (both Twist Realty, L.P. and Twist Monroe, L.P.) at all times has been ready, willing, and able to perform all of its obligations under the Lease, and Twist remains so through and after the date of filing of its *Motion for Partial Summary Judgment as to Liability for Lease Payments*.

(Pl. Statement of Mat. Und. Facts, ¶¶ 1-14 [doc. # 16] (footnotes omitted)).

## III. Default (or Breach)

A lease contract is the law between the parties; it defines the parties' respective legal rights and obligations. *Huckabay v. Red River Waterway Com'n*, 663 So.2d 414, 419 (La. App. 2d Cir. 1995) (citing *Frey v. Amoco Prod. Co.*, 603 So.2d 166 (La.1992); La. Civ. Code Art. 1983). Here, the uncontroverted facts adduced by Twist establish that Starbucks failed to pay rent and other charges when due, and that the failure to make the payments as required under the Lease continued for more than 10 business days after Twist notified Starbucks of its delinquency. Consequently, Starbucks is in default and has breached the terms of the Lease. (Lease, ¶ 14.1(a)). The undersigned finds that there is no genuine issue as to any material fact, and that plaintiff, Twist, is entitled to judgment as a matter of law declaring that Starbucks breached and defaulted upon its payment obligations under the Lease. Fed.R.Civ.P. 56.

## IV. Remedies

The Lease permits Twist, as landlord, to elect one of two, non-exclusive remedies due to Starbucks' uncured default. (Lease, ¶¶ 14.2, 23.11). First, Twist may terminate the Lease by ending Starbucks' right to possess the premises and recovering all damages due to Starbucks' default "including, but not limited to, the cost of recovering possession of the Premises,

reasonable expenses of reletting, and the Base Rent and Annual Additional Rent as it becomes due hereunder; . . ." *Id*. at ¶ 14.2(a). Alternatively, Twist may perpetuate the Lease by maintaining Starbucks' right to possession and enforcing its rights under the Lease "including the right to recover the Base Rent and Annual Additional Rent **as it becomes due hereunder**." *Id*. at ¶ 14.2(b) (emphasis added).[5] Nevertheless, the Lease provides that "with respect to any remedy exercised by Landlord, Landlord shall have an affirmative obligation to use commercially reasonable efforts to obtain another tenant for the Premises promptly, at a fair market rental, and to otherwise mitigate its damages." *Id*.

Twist has elected to maintain the lease and compel specific performance. *See*, Pl. Statement of Mat. Und. Facts, ¶ 14. In response to Twist's motion, Starbucks does not contest that it has failed to pay the amounts due under the Lease; it merely questions whether Twist has exercised "commercially reasonable efforts" to obtain another tenant or to otherwise mitigate its damages. In conjunction with its opposition, Starbucks filed a motion to continue Twist's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(f) so that it may conduct discovery regarding Twist's efforts to obtain another tenant and whether those efforts were commercially reasonable. (Def. Rule 56(f) M/continue [doc. # 29]). In support of its motion, counsel for Starbucks averred that discovery had not yet been undertaken by the parties, and that he wished to conduct discovery to determine 1) whether Twist's actions were commercially reasonable, and 2) whether the marketability of the Lease was such that Twist should have been able to replace Starbucks as a tenant. (Affidavit of Shelton Blunt; Def.

---

[5] These remedies track the relief available under Louisiana law. *See, Richard v. Broussard*, 495 So.2d 1291, 1293 (La. 1986).

M/Continue, Exh.).

Rule 56(f) provides,

**(f) When Affidavits Are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) deny the motion;

(2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3) issue any other just order.

Fed.R.Civ.P. 56(f).

A non-movant seeking relief under Rule 56(f) must demonstrate: "(1) why [it] needs additional discovery and (2) how that discovery will create a genuine issue of material fact. A party cannot evade summary judgment simply by arguing that additional discovery is needed, and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 162 (5th Cir. 2006) (citations and internal quotation marks omitted).

Although Starbucks' request for a continuance under Rule 56(f) is short on specifics, it does identify a potentially viable defense to Twist's claims which could, if substantiated, serve to limit or reduce Twist's right of recovery. Moreover, Twist filed the instant dispositive motion only eight days after the Rule 26(f) planning meeting and before any discovery had occurred. (*See*, Blunt Affidavit). While Twist has adduced evidence which, if unchallenged, could support a finding that it has thus far exercised commercially reasonable efforts to find a tenant to replace Starbucks,[6] principles of fundamental fairness dictate that Starbucks should be afforded the

---

[6] *See*, Pl. Statement of Mat., Undisp. Facts, ¶¶ 15-16 and Exhs. J & K.

8

opportunity to disprove (or confirm) the reasonableness of those efforts.

In lieu of a continuance, however, the undersigned finds that the appropriate Rule 56(f) remedy is to deny plaintiff's motion for partial summary judgment, insofar as it seeks a judgment declaring a remedy for defendant's breach. Fed.R.Civ.P. 56(f)(1). This approach may prove particularly expedient if the parties are able to streamline the disputed issues. *See*, Def. Opp. Memo., pg. 5 (Starbucks hopes to amicably resolve the matter). In any event, discovery will likely significantly alter the landscape of the case such that a new motion on damages[7] will facilitate its ultimate disposition.[8]

The court further observes that under the Lease, Twist has the right to recover the Base Rent and Annual Additional Rent *as they become due*. (Lease, ¶ 14.2(b)). Under Louisiana law, the lessor may recover future accelerated rentals "**if** the lease contains an acceleration clause." *Ken Lawler Builders, Inc. v. Delaney*, 837 So.2d 1, 6 (La. App. 2d Cir. 2002) (citing *inter alia, Richard v. Broussard*, 495 So.2d 1291, 1293 (La. 1986)).[9] Here, there is no evidence that the Lease contains an accelerated payments clause. Nonetheless, if Twist is able to establish that Starbucks has repudiated the Lease or does not intend to make its future payments, then plaintiff arguably could employ the doctrine of anticipatory breach to recover the future payments. *See, Ken Lawler Builders, Inc., supra*; *Andrew Development Corp. v. West Esplanade Corp.*, 347 So.2d 210, 212-213 (La. 1977); *Shell Offshore, Inc. v. Marr*, 916 F.2d 1040, 1048-1049 (5th Cir.

---

[7] Provided there are no genuine issues of material fact.

[8] Defendant's motion to continue will be denied in a separate order.

[9] *But see, Henry Rose Mercantile & Mfg. Co. v. Stearns*, 154 La. 946, 98 So. 429 (La. 1923) (lessor may hold lessee for the rent, both for expired and unexpired terms of lease, and sue accordingly).

9

1990) (Lender able to recover remaining balance of loan where borrower unequivocally repudiated responsibility for repaying loan).[10] At this juncture, however, plaintiff has not adduced evidence to establish "beyond peradventure" that Starbucks will continue to ignore its payment obligations for the remaining term of the Lease.[11] Moreover, plaintiff's motion does not reflect its continuing obligation to lease the premises or demonstrate that (or how) it will continue to use "commercially reasonable efforts" into the future.

For the foregoing reasons,

**IT IS RECOMMENDED** that the motion for partial summary judgment [doc. # 9] filed by plaintiff, Twist Monroe, L.P. be **GRANTED in part**, and that judgment be entered in favor of plaintiff declaring that defendant Starbucks Corporation has breached and defaulted upon its payment obligations under the June 11, 2007, Commercial Lease.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for partial summary judgment [doc. # 9] otherwise be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections

---

[10] In fact, in its opposition memorandum, Starbucks asserted that expert testimony was necessary to determine the "net present value of the Lease." (Def. Opp. Memo., pg. 5). This language suggests that Starbucks agrees that an award for future rental payments may be warranted.
    In its reply brief, Twist questions the necessity of calculating "net present value." Certainly, if Twist is not seeking an award for future rental payments, and instead only seeks a judgment ordering their remittal as they become due, then there would be no need to calculate the present value of those payments.

[11] General press reports issued by Starbucks, notwithstanding. Discovery will clarify Starbucks' intentions.

within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 10th day of December, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE